# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>KIMBERLY ANN BROWN,<br><br>                Defendant. | CASE NO. 17cr3716-LAB-1<br><br>**ORDER DENYING MOTIONS FOR REDUCTION OF SENTENCE [DOCKET 58, 61]** |

    Kimberly Ann Brown pled guilty in 2018 to conspiracy to import methamphetamine in violation of 21 U.S.C. §§ 952, 960, and 963, and 18 U.S.C. § 2. The Court imposed a total custodial sentence of 60 months, followed by five years of supervised release. She is currently being held at FCI Victorville Medium II, at FCC Victorville.

    Brown moved for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A). Under this section, a court may modify a defendant's term of imprisonment if it concludes that "extraordinary and compelling reasons" warrant a reduction after considering the factors set forth in 18 U.S.C. § 3553(a). Brown's motion cited her history of monoclonal gammopathy of undetermined significance (MGUS) and immunoglobulin deficiency. It said she planned to live with her daughter, and would support herself on a pension

through her late husband's retirement. She has completed the RDAP program, and her projected release date is this fall. However, the Bureau of Prisons (BOP) has rejected her request for home confinement.

The Government filed a notice of conditional non-opposition. Its non-opposition was conditioned on Brown affirmatively demonstrating that she has a stable residence to be released to and appropriate transportation to that residence.[1] Brown then filed a renewed motion for release without making any new arguments or presenting any new evidence.

Brown's motion is supported by a declaration from Dr. Adl-Tabatabai, a physician specializing in Emergency Medicine, who works full-time in an emergency room. (Ex. A.) Dr. Adl-Tabatabai's declaration is based on his review of some or all of Brown's medical records from 2019 and 2020, as well as one record from 2016. A small number of these — presumably the most pertinent — are provided, as Exhibit B. Dr. Adl-Tabatabai noted that the 2016 record showed Brown had a history of MGUS and immunoglobulin deficiency. He noted that later records did not mention or address those issues, from which he concludes that these conditions were not addressed or adequately worked up. He notes that the omission of these conditions from more recent records "suggests that she may not be receiving appropriate medical care for them." (*Id.*, ¶ 11.) He concluded it was "reasonable to suspect that this . . . would put Ms. Brown at a higher risk" of contracting COVID-19, and at a higher risk of developing serious complications should she contract it. (*Id.*, ¶ 12.) If Brown were his patient, Dr. Adl-Tabatabai said he would recommend evaluation by a hematologist, hemoglobin electrophoresis, and possibly a bone marrow biopsy.

---

[1] Brown has two adult daughters. Her motion is supported by a letter from her younger daughter, who said that if released, Brown would reside with the older daughter.

The declaration makes clear Dr. Adl-Tabatabai's conclusions are based solely on a review of records, and he has not examined or treated her. His assessment of risk can fairly be described as attenuated. It is also worth noting that if Dr. Adl-Tabatabai's inference about a lack of evaluation and treatment is correct, it means that other non-BOP physicians who examined or treated Brown well before she was taken into custody apparently saw no need for the evaluation or treatment he now recommends. Nothing Dr. Adl-Tabatabai has said and nothing in the record suggests these conditions are currently causing any medical problems. With the possible exception of Dr. Adl-Tabatabai's recommended evaluations, the treatment Brown is receiving from BOP appears to be adequate and that releasing her early would not effect any great improvement in the quality of that care.

An outbreak of COVID-19 began at the Victorville complex in June of 2020. (Ex. H, ¶ 49.) Before Brown filed her motion, Federal Defenders represents that the number of active cases of COVID-19 had been high, with seven active inmate cases at Victorville Medium II, eleven active staff cases, 71 recovered inmate cases, and nine recovered staff cases. (Ex. H., at 36–37.) The number of cases at Victorville Medium I and Victorville USP was higher. All told, as of November 2, 2020, there were 17 active inmate cases, 43 active staff cases, 542 recovered inmate cases, 30 recovered staff cases, and one inmate death at the entire complex — for a total of 644 cases. (*Id.*, ¶¶ 44–4.) Since then, two more inmates died. *See* https://www.bop.gov/coronavirus/ (visited June 2, 2021). After the motion was fully briefed, however, infections fell off. Since then, the number of active cases at Victorville has dropped to two — one inmate and one staff member at FCI Victorville Medium II. *Id.*

When Brown filed her motion, it was unclear when vaccinations would become available. Not long afterward, however, vaccines became available. Since then, BOP prisoners have been offered vaccines and the number of

- 3 -

17cr3716

vaccinated prisoners is rising. *United States v. Johnson*, 2021 WL 1565780, slip op. at *2 and n.21 (D. Nev., Apr. 21, 2021). At last count, 1879 prisoners (of around 3850) and 398 staff at FCC Victorville were fully vaccinated. *See* https://www.bop.gov/coronavirus/ and https://www.bop.gov/locations/list.jsp. These figures do not include the number who may be partially vaccinated, although it is reasonable to suppose the number of fully-vaccinated inmates and staff will only increase.

The parties have not provided any update on whether Brown has been vaccinated or on her health since November. *See United States v. Kariblghossian*, 2021 WL 1200181, slip op. at *3 (C.D. Cal., Mar. 29, 2021) (finding that in spite of defendant's serious medical conditions, vaccination mitigated the COVID-19 risk). But it appears there is no great threat of COVID-19 infection among inmates at Victorville at this time.

In the Court's view, Brown is an example of a prisoner who could suitably be placed in home confinement. She is nearing the end of her sentence and does not appear to be a danger to the community. Releasing her early might arguably also reduce risks to her health. That being said, the Court is mindful that in § 3582 does not provide carte blanche to reduce sentences whenever it seems appropriate. Federal courts do not have inherent authority to modify sentences. *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999) (recognizing that district courts have no inherent authority to amend prison sentences they have imposed). The general rule is that a court cannot modify a sentence after it has been imposed, unless modification is "expressly permitted" by statute or rule. *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (quoting § 3582(c)(1)(B).) *Accord Barragan-Mendoza*, 174 F.3d at 1029. The "extraordinary and compelling reasons" standard is high, and not easily satisfied. *See United States v. Burda*, 2021 WL 1530063, slip op. at *1 (S.D. Cal., Apr. 19, 2021) (describing the standard as a "high bar"); *United*

*States v. Crawford*, 2020 WL 4791265, slip op. at *6 (W.D. Wash., Aug. 18, 2020) ("Extraordinary and compelling reasons must be Extraordinary and compelling . . . .")

      Brown has not shown that remaining in custody puts her in any particular danger either now or in the future. Whatever danger there may be is only likely to decline, as she and other prisoners and staff are vaccinated. While she presents a sympathetic case, in the Court's view it falls well short of the "extraordinary and compelling reasons" standard set forth in 18 U.S.C. § 3582(c)(1)(A). Her request for early release is **DENIED**.

**IT IS SO ORDERED**.

Dated: June 7, 2021

*Larry A. Burns*
Honorable Larry A. Burns
United States District Judge